# ILLINOIS GRAND TRUNK RAILWAY COMPANY *v.* WADE.

## APPEAL FROM THE CIRCUIT COURT OF THE UNITED STATES FOR THE NORTHERN DISTRICT OF ILLINOIS.

No. 251. Submitted March 24, 1891. — Decided April 27, 1891.

June 25, 1870, the town of Lamoille voted to subscribe $30,000 to the stock of appellant, and August 6, 1870, voted to subscribe $10,000 additional thereto. February 1, 1871, the town subscribed $40,000 thereto, issued 40 bonds of $1000 each in payment thereof, and received $40,000 in stock. The company parted with the bonds, and the same were sold for 90 cents on the dollar, and the majority of them came into possession of the appellee. The $10,000 additional subscription was held void as violating the provisions of the Constitution of Illinois, adopted July 2, 1870. Thereupon the appellee filed this bill against the town and the railway company, tendering the bonds for surrender and cancellation, and praying that $10,000 of the stock held by the company should be transferred to him. A decree was entered in accordance with the prayer of the bill, from which the railway company only appealed. *Held,*

(1) That the plaintiff's rights, so far as concerned the town, rested on the decree which the town had not appealed from, and there was no matter of subrogation to be considered in the controversy with the railway company;

(2) That the railway company, having parted with the bonds for consideration, had no equities which it could set up as against the claim of the plaintiff;

(3) That there was no question of laches or limitation;

(4) That it was too late to raise the objection that these matters could not be combined in one suit.

IN EQUITY. The case is stated in the opinion.

*Mr. John J. Herrick* for appellant.

*Mr. George A. Sanders* and *Mr. Thomas S. McClelland* for appellee.

MR. JUSTICE BREWER delivered the opinion of the court.

The Illinois Grand Trunk Railway Company was incorporated in 1867, under a special charter granted by the legis-

lature of the State of Illinois. On June 25, 1870, the town of Lamoille voted to subscribe to the capital stock of the railway company to the amount of thirty thousand dollars, and to issue in payment therefor its bonds, payable in ten years, of equal amount. On August 6, 1870, another election was held, at which the town voted to subscribe the further sum of ten thousand dollars to the stock of the railway company, and to issue its bonds, in equal amount, in payment therefor. On February 1, 1871, in pursuance of these two elections, a subscription on behalf of the town was made, and its forty bonds, for the sum of one thousand dollars each, were executed and delivered to the railway company, and a certificate for forty thousand dollars of capital stock was issued by the railway company and delivered to the town. These bonds were payable "to bearer," and when received by the railway company were transferred by it to the Chicago, Burlington and Quincy Railroad Company, and by the latter were sold at ninety cents on the dollar. Thereafter, and in 1871, the appellee bought the majority of these bonds, including therein the whole of the last ten thousand dollars thereof from Jacob R. Shepherd & Co., paying ninety-nine cents on the dollar.

No question is made as to the sufficiency or validity of this transfer, or as to the fact that the appellee acquired all the title of the Illinois Grand Trunk Railway Company, the original obligee in the bonds. It appears that on July 2, 1870, this section of the Illinois constitution of 1870, which had been separately submitted to and adopted by a vote of the people, went into effect:

"No county, city, town, township or other municipality, shall ever become subscriber to the capital stock of any railroad or private corporation, or make donation to or loan its credit in aid of such corporation: *Provided, however*, That the adoption of this article shall not be construed as affecting the right of any such municipality to make such subscriptions where the same have been authorized, under existing laws, by a vote of the people of such municipalities prior to such adoption." Starr & Curtis' Stat. vol. 1, 167.

The effect of the adoption of this section was to render void

the action of the town on August 6, and invalidate the ten thousand dollars of bonds issued in pursuance of that vote. *Wade* v. *Walnut,* 105 U. S. 1, and cases cited in the opinion.

On March 28, 1885, Wade, the holder of these ten thousand dollars of void bonds, filed his bill in the Circuit Court of the United States for the Northern District of Illinois, against the town of Lamoille and the Illinois Grand Trunk Railway Company, in which bill he tendered the bonds to the town for surrender and cancellation, and prayed that ten thousand dollars of the forty thousand dollars of stock issued by the railway company to the town be transferred to him. Both the town and the railway company filed answers; the town simply putting the plaintiff to proof of his allegations, and asking that if the plaintiff be decreed the title to the stock, the decree, so far as the town is concerned, be at his costs and on condition of the surrender and cancellation of the bonds. The railway company answered, denying at length the principal allegations of plaintiff's bill, and pleading laches and limitation, in addition, as a defence. After the testimony had been taken, and on June 24, 1887, a decree was entered in favor of the plaintiff, substantially directing that Wade deposit in the office of the clerk of the Circuit Court, for the benefit of the town, the ten thousand dollars of bonds and their coupons, and that thereupon he be put into possession of ten thousand dollars of the stock of the railway company held by the town. From this decree the railway company alone prosecutes an appeal, the town being content to abide by its terms. In this respect it may be noticed that the plaintiff in his bill alleged that the people of the town of Lamoille were willing that he should have all the benefit and advantage which he could derive from said stock, but that the officers of the town refused to deliver the certificate. Appellant relies largely upon the case of *Ætna Life Insurance Company* v. *Middleport,* 124 U. S. 534, and contends that under the authority of that case the plaintiff could not be subrogated to the rights of the town in this ten thousand dollars of stock. It also contends that the subscription by the town to that amount of stock, and the issue by the railway company thereof, was itself a void transaction,

and conferred no title on the town thereto; and, finally, that laches and limitation constituted a good defence to plaintiff's claim.

Assuming that the first contention of appellant might be of force if the town had joined in the appeal, we are of opinion that it is a defence which the railway company alone cannot now make. By the decree, the rights of the town to that stock have been transferred to the plaintiff. The town not challenging the decree, it is final, and the plaintiff, in respect to the rights of the town in the stock, stands in the same attitude that he would stand if the town had voluntarily transferred it to him. The railway company has no interest in protecting the rights of the town. It could not interfere to prevent a voluntary transfer of the stock, and it cannot be heard to say that the town shall not abide by the terms of that decree; so that the present appeal is to be considered by us precisely as though the town had voluntarily transferred the stock to the plaintiff, or as though he had in a different suit, and by a prior decree, obtained a transfer of its interest. There is, therefore, no matter of subrogation to be considered, and no inquiry into the extent to which this doctrine could be applied. The plaintiff has all the rights that the town had. Under those circumstances, can the railway company challenge this decree? It insists that the whole transaction in respect to the ten thousand dollars of stock between the town and itself was void; but the facts, as disclosed, are, that there were two votes to subscribe, one on June 25, for thirty thousand dollars, and one on August 6, for ten thousand dollars, of stock. The validity of the first vote, and of the bonds issued thereunder, is not challenged. No separate subscriptions were made, but on February 1, 1871, one subscription of forty thousand dollars was made by the town, and one certificate for four hundred shares of one hundred dollars each, issued by the railway company to the town. Can the legal title of the town to these four hundred shares be doubted? Clearly not. It has paid therefor thirty thousand dollars of valid securities. If it has not paid in full for the four hundred shares, it has paid seventy-five per cent of the amount due therefor; and its title acquired

thereby was good.  Whatever rights the railway company might have if the ten thousand dollars of bonds had been declared void while in its hands, or if it had not sold them and received consideration for them from other parties, or if, having received consideration, it had returned the same and taken up the bonds when they were declared void, and now tendered them back to the town, need not be considered.  It is enough that it took the forty thousand dollars of bonds as payment for this subscription for an equal amount of stock; that it disposed of those bonds and received value therefor; and that it has never offered to return the void bonds to the town, and never taken any proceedings to assert its equitable rights, if any it had, in the stock.  The equity of plaintiff's claim is manifest.  The railway company received all the bonds — the void as well as the valid — on the same terms, and as payment dollar for dollar, for the stock it issued.  It transferred all the bonds, receiving the same consideration for one as for the other.  The party who took these bonds from it sold the entire series, and received ninety cents on the dollar; and so, by subsequent sales, they passed from one to another until the major part of the whole series reached the plaintiff.  The railway company has never returned any of the consideration it received, or been called upon to pay back a single dollar; neither has any one of the subsequent vendees.  The plaintiff, and the plantiff alone, is the one out of money; and now, when he proposes to take this stock for the money which he has paid out, and thus close the entire transaction, the railway company objects.  It received these bonds as valid; it got full value for them, and still objects that the town ought not to be permitted to do justice to the party who has unfortunately parted with his money for these void securities.  If ever there was a case in which no wrong was done, and justice and equity are meted out to all the parties, this is such a case.

In regard to the last contention, it is enough to say that the rights of complainant as against the railway company may be considered as having been for the first time established by the decree; and surely in that light there is no question of laches or limitation.  If it be objected that, therefore, when the bill

was filed in the first instance no right existed in plaintiff, as against the railway company, it is enough to say that no objection was made on the ground that plaintiff had not yet acquired the rights of the town. It may be true that for all the relief claimed, and in view of the fact that the stock was all included in one certificate, the railway company was a necessary party to the suit; and yet it cannot be doubted that the plaintiff could, in a separate proceeding against the town alone, have established his right to one-fourth of the four hundred shares, and thereafter filed his bill to compel a recognition by the railway company of this right. No objection was made to combining these matters in one suit, and it is now too late to raise the objection.

The decree of the Circuit Court was right, and it is

*Affirmed.*

The CHIEF JUSTICE did not participate in the consideration and decision of this case.