CITIZENS' SAVINGS & LOAN ASS'N et al. v. BELLEVILLE & S. I. R. CO.

(Circuit Court of Appeals, Seventh Circuit. May 6, 1902.)

No. 842.

**1. CORPORATION—EQUITABLE RIGHT TO STOCK.**

A railroad company issued and delivered to a county a certificate for a certain number of shares of its authorized capital stock, in payment for which it received bonds of the county, which it transferred to a contractor, who constructed its road in part payment therefor. The contractor was entitled under his contract to all sums received by the company for stock sold, and to all stock remaining unsold at the time the road was completed. The bonds were payable to bearer, and were transferred for value by the contractor to complainants, or to others through whom complainants acquired them. The bonds were adjudged void, and in a subsequent suit by a stockholder of the company against the county the certificate of stock issued in exchange therefor was also declared void and canceled. *Held*, that the bonds, being void when delivered by the company to the contractor in lieu of the stock for which they had been exchanged, carried with them the right to such stock, which passed by their transfer to subsequent holders, and that complainants were entitled in equity to a decree requiring the company to issue the stock to them.

**2. SAME.**

The fact that complainants were chargeable with notice, either constructive or actual, of the facts which rendered the bonds void, would not affect their right to relief against the railroad company; no question of bad faith being involved.

**8. SAME—SUIT TO COMPEL ISSUANCE—PARTIES.**

In a suit against the railroad company to compel the issuance of the stock to complainants, as bona fide holders of the bonds, neither the county, the original holder, nor any stockholder of the company was a necessary party.

**4. SAME—CONDITIONS PRECEDENT—DOING EQUITY.**

The railroad company was not entitled in such suit to demand that complainants should be required, before being entitled to equitable relief, to bring into court, for its use, interest payments made by the county on the void bonds; having parted with nothing which gave it any equitable right to such payments.

**5. DISMISSAL AS AGAINST INTERVENING DEFENDANT—EFFECT AS TO OTHER DEFENDANTS.**

The dismissal of a bill by the court as to a defendant who has been improvidently granted leave to come in as a defendant on his own motion, but who is not a necessary or proper party, does not affect the right of complainant to proceed against the original defendant.

Appeal from the Circuit Court of the United States for the Southern District of Illinois.

In 1857 the Belleville & Southern Illinois Railroad Company was chartered by the legislature of Illinois. It had an authorized capital stock of

$2,000,000, the issuance of which was under the control of the directors. The charter authorized the company to receive stock subscriptions from counties, which should be binding on the counties if made conformably to the railroad aid act of 1849. This act permitted a county to subscribe for not more than $100,000 of the capital stock of any railroad company, if the proposition (to which the county might affix conditions) should receive at an election the support of a majority of the legal voters of the county, and to issue its bonds in payment of its stock subscription. In 1869 the majority of the legal voters of Perry county carried a proposal that the county should subscribe for $150,000 of the capital stock of the Belleville & Southern Illinois Railroad Company, to be paid with county bonds, on condition that the company should locate its machine shops at Du Quoin. On July 2, 1870, a constitutional amendment came into force, which provided: "No county, city, town, township or other municipality, shall ever become subscriber to the capital stock of any railroad or private corporation, or make donation to or lend its credit in aid of such corporation: provided, however, that the adoption of this article shall not be construed as affecting the right of any such municipality to make such subscriptions where the same have been authorized, under existing laws, by a vote of the people of such municipalities prior to such adoption." Const. 1870, Amend. 14. In September, 1870, the directors of the Belleville & Southern Illinois Railroad Company passed a resolution requiring the president and chief engineer to locate the machine shops at Du Quoin. In December, 1870, the county court delivered to the railroad company 100 bonds of Perry county, for $1,000 each, payable to bearer, due in 20 years; and the railroad company delivered to Perry county its certificate that the county was the owner of 1,000 shares, of $100 each, in the capital stock of the company. The railroad company did not build its machine shops at Du Quoin, but at East St. Louis. For 17 years Perry county paid the interest on the bonds. In 1888 the county defaulted, and in a suit brought by the Citizens' Savings & Loan Association, one of the appellants here, it was finally decided that the bonds were void. Citizens' Savings & Loan Ass'n v. Perry Co. (March 4, 1895) 156 U. S. 692, 15 Sup. Ct. 547, 39 L. Ed. 585. In a suit by a stockholder against the railroad company and Perry county, the state court determined that the certificate of stock held by the county was void, and ordered its cancellation and return to the railroad company. Stebbins v. Perry Co. (Oct. 12, 1897) 167 Ill. 567, 47 N. E. 1048. In obedience to this decree the certificate was canceled and surrendered. None of the holders of the void bonds was a party to that suit, but some of them knew that such litigation was in progress. The railroad company in 1869 contracted with one Selah Chamberlain to build its road. The contract provided that Chamberlain should receive as pay, among other things, the following: "All moneys which have been or shall be paid on account of subscriptions to the capital stock of said railroad company; the balance of such capital stock which shall remain unsubscribed for at the time of completion of said railroad; all moneys, lands, and other property which have been or shall be prior to the completion of said railroad granted or donated by any county, town, corporation, or individual to aid in the construction of said railroad, or any portion thereof, except such lands as shall be occupied by said railroad, or be necessary for use in the actual operation of the same." The Perry county bonds were turned over by the railroad company to Chamberlain in part payment for the construction of the road. In August, 1871, the Citizens' Savings & Loan Association purchased from a firm of New York brokers 40 of these bonds, of which it remains the holder. The other appellants hold 39 of the bonds, purchased at various dates between August, 1871, and 1882. Appellants paid for the bonds prices ranging from 82 to 104 cents on the dollar. This suit was begun in April, 1898, by the Citizens' Savings & Loan Association against the Belleville & Southern Illinois Railroad Company to obtain a decree requiring the defendant to issue to complainant a certificate for 400 shares of its capital stock. The other appellants were admitted as parties complainant. The facts hereinbefore narrated were counted upon and proven, and this appeal presents the question whether appellants were entitled to relief. Appellee has interposed a motion to dismiss the appeal,

based upon these facts: Stebbins, a stockholder in the railroad company, filed a petition to be let in as a party defendant on the ground that he had a substantial interest as stockholder in defeating the issuance of stock to complainants. The court granted him leave to plead, answer, or demur to the bill "in all respects as though he had been made a defendant." He demurred, assigning various reasons, one of which was that there was no equity in the bill. Complainants confessed Stebbins' demurrer, and the court thereupon dismissed the bill as to Stebbins. The railroad company then moved that the bill be dismissed as to it on the ground that the confession and dismissal as to one joint defendant deprived complainants of the right to proceed against the remaining joint defendant. This motion was carried to the hearing, at which the bill was dismissed generally for want of equity.

Edward Cunningham and Wm. B. Sanders, for appellants.
John G. Drennan and Charles W. Thomas, for appellee.

Before JENKINS, GROSSCUP, and BAKER, Circuit Judges.

BAKER, Circuit Judge, after stating the case as above, delivered the opinion of the court.

The bonds were void. The stock subscription was void. The stock certificate was void. But the stock was not void. The 1,000 shares with respect to which the void subscription was made and the void certificate issued were a part of the authorized capital stock, were as existent and valid as any other of the shares, and were fully within the directors' power to dispose of for value to any one who had capacity to contract. Under the construction contract, Chamberlain was entitled to the proceeds of the sale of these shares, if sold, or the shares themselves, if unsold. In payment for labor and materials that went into the road the company delivered to Chamberlain the void bonds it took from Perry county on the void sale of these shares. Perry county lacked authority to subscribe for the shares and to issue the bonds as it did. The county and the railroad company, in exchanging the bonds and the stock certificate, were in pari delicto. But the railroad company and Chamberlain had capacity to make the construction contract. In executing this contract the railroad company took void bonds it had received from Perry county, and turned them over to Chamberlain in payment of a valid debt, and in this the railroad company and Chamberlain were not in equal fault. Chamberlain, like any other purchaser, was chargeable with notice of the condition precedent in the proposition adopted by the voters; but he did not participate in the proceedings underlying the bond issue, and it was not his, but the railroad company's, duty to perform the condition precedent. The railroad company received the bonds as blank pieces of paper; but, in passing them to Chamberlain as good payment of its debt to him, it must be held to have represented that the condition precedent had been performed or would be performed, and that, on its failure to perform, it would deliver to him the shares in lieu of which the bonds were paid to him. The issuance of bonds and the subscription for shares by the county being nullities, the first that anything of substance appeared in the transaction was when the railroad company paid for labor and materials with the void bonds, and the first that the labor and materials were paid for in money was when Chamberlain sold the bonds to appellants or their predecessors in interest. So the outcome

was that appellants' money paid appellee's debt, for which appellee was bound by its contract to deliver, not void bonds, but the very shares in question, which have lain unsold and unsubscribed for, except as they were sold to and subscribed for by Chamberlain in his contract.

The case of Ætna Life Ins. Co. v. Town of Middleport, 124 U. S. 534, 8 Sup. Ct. 625, 31 L. Ed. 537, relied on by appellee, is not found to be controlling. The present is not a case of subrogation, as that doctrine is defined in the books. Nor is the case of Railroad Co. v. Wade, 140 U. S. 65, 11 Sup. Ct. 709, 35 L. Ed. 342, cited by appellants, a direct precedent. But the principle, variously stated, is fundamental in equity that no one should be permitted to retain a specific, identified thing which, ex æquo et bono, he should surrender to another. The limits of the application of this principle cannot and should not be attempted to be stated with precision and finality, but, as Mr. Justice Miller suggested with respect to what constitutes due process of law, should be left to the long processes of judicial inclusion and exclusion. The root of the matter is, however, that courts of equity were called into being to enforce, and should continue to apply and extend the application of, those standards of common honesty and natural justice which appeal to the conscience of right-thinking men. In this case, appellee has received full consideration for the shares of stock in question. The consideration cannot be returned, but the stock can be surrendered. Appellee should not be permitted to hold the shares by reason of the fact that it turned over void bonds when it should have delivered these identical shares.

It remains to determine whether other considerations prevent the granting of appropriate relief.

It is said that one of the appellants should be defeated because he had actual notice of facts which should have led him to full knowledge of the illegality of the bond issue. The bonds were signed by the officers of Perry county and delivered to the railroad company after the constitutional amendment of 1870 went into effect. As the bonds contained no recitals, every person was bound, at his peril, to find out whether they came within the exception to the constitutional inhibition. Actual notice, no question of bad faith being involved, should not be visited with more serious consequences than constructive notice.

Perry county was not a necessary party. The bonds and the stock subscription having been adjudged void, the county has no possible interest in this controversy.

The stockholders of appellee were not necessary parties. This case does not involve an overissue of stock. These shares are part of the authorized capital. The directors had authority to contract for their disposal for value. Chamberlain, under the facts of the case, subscribed and paid for them. The stockholders are no more concerned than in any case in which a subscriber for shares asks a specific performance of his contract. And this also disposes of the motion to dismiss the appeal. No cause of action was stated against Stebbins or any other stockholder. As the order admitting him to defend was improvidently granted, it is immaterial how he was let out.

Chamberlain was not a necessary party. The void bonds were payable to bearer. He took them for value. He transferred them for value. He did not transfer any right on the bonds against Perry county, for there was none. If there had been, that right would have been in the bearer. The void bonds, when put in circulation by the railroad company, represented the right to these shares of stock. If the railroad company had given to Chamberlain its direct written obligation to issue to bearer a certain number of shares, Chamberlain could have transferred his right without indorsement. The right that arose in Chamberlain on the delivery of the void bonds to him (namely, to demand the stock) passed by his delivery of the bonds to the bearer. As no one can assert the right except the bearer, it is not necessary to appellee's protection that former holders should be made parties to this suit.

Appellee insists that appellants are not entitled to ask equity without doing equity, by bringing into court for appellee's use the interest paid by Perry county. The county received nothing, was obligated to pay nothing, and parted with nothing except voluntary gifts. If the county had paid moneys to appellants or prior holders on some other claim, or without claim, appellee would have as much right to demand those sums. The void bonds came into the hands of appellee as blank paper. Appellee, under the facts of the case, issued them as evidences of the right to shares of stock, and they can now serve no purpose but to identify the persons entitled to the shares.

Appellants are not chargeable with laches. The bonds were not finally declared void until 1895. The litigation concerning the validity of the stock subscription ended in 1897. Within a few months this suit was commenced. Appellee was not the owner of these shares, but held them as trustee, and no limitation upon the right of action would begin until appellee denied the trust.

The decree is reversed and the cause remanded, with instructions to enter a decree requiring appellee to issue certificates of stock as prayed for.