CITIZENS' SAVINGS & TRUST CO. et al. v. ILLINOIS CENT. R. CO. et al.

(Circuit Court, E. D. Illinois. October 27, 1909.)

CORPORATIONS (§ 170*)—SUITS BY STOCKHOLDERS—GROUNDS OF ACTION.

A county subscribed for stock of a railroad company, and issued its bonds in payment therefor, which were transferred by the company, but in suits brought by the holders were adjudged void. The certificate of stock issued to the county was thereafter canceled by a decree of court for want of consideration, and by a subsequent decree in a suit by the bondholders the company was required to issue certificates for such stock to them, which it did. *Held*, that such bondholders did not become stockholders of the company until such decree, nor did the stock then devolve upon them by operation of law, since they might have sued for damages, instead of for the stock, and that therefore, under equity rule 94 of the federal courts, they could not maintain a stockholders' suit to set aside leases or transfers of property made by the company prior to such date.

[Ed. Note.—For other cases, see Corporations, Cent. Dig. § 626; Dec. Dig. 170.*]

In Equity. Suit by the Citizens' Savings & Trust Company and another against the Illinois Central Railroad Company and others. On demurrers to bill by defendants Illinois Central Railroad Company and United States Trust Company. Demurrers sustained.

The bill herein exhibited by the complainants against the Illinois Central Railroad Company, the Belleville & Southern Illinois Railroad Company, the St. Louis, Alton & Terre Haute Railroad Company, and the United States Trust Company of New York in substance and legal effect discloses that on December 5, 1870, the Belleville Company did attempt to sell to Perry county, Ill., one thousand shares of its capital stock, of $100 each, in exchange for 100 bonds of said county, in the aggregate $100,000, dated January 1, 1871, each for $1,000, with interest as by coupons attached, payable to the Belleville Company, or bearer, 20 years after date. The Belleville Company delivered the bonds to Selah Chamberlain under contract for constructing purposes, who sold them, and of which in 1871 complainant purchased 40 thereof, amounting to $40,000, and that complainant Chaplin is the trustee for 39 of said bonds similarly purchased by several of his beneficiaries; that previous to their issue an attempt had been made to authorize the issue of said bonds by a vote of the electors of said county, conditioned that the Belleville Company would locate its machine shops at Duquoin, in said county, but the bonds were issued without such condition having been fulfilled. The contract with Chamberlain for construction provided that he should have all unsubscribed stock at the time of completion of the road. Until 1887 the said county treated the bonds as valid, and paid the interest, but in 1890 failing therein, in a suit by the complainant in the United States Circuit Court to collect such interest, it was adjudged by the court the bonds were invalid. Subsequently the Belleville Company procured Stebbins, a stockholder, to sue for a cancellation of the stock held by said county, and the state court decreed accordingly, which was affirmed by the State Supreme Court October 16, 1897, and the shares of stock previously held by the county were surrendered and canceled in the same month, and as so canceled returned to the Belleville Company. June 8, 1895, complainant sued in equity in the United States Circuit Court the Terre Haute Company, Belleville Company, and Perry county, to be subrogated to the right of Perry county, but later, June 21, 1898, dismissed the suit by reason of the decision of the state Supreme Court previously mentioned. April 15, 1898, complainant sued the Belleville Company in equity in the United States Circuit Court, on its own behalf and that of other holders who might choose to intervene, asking that the Belleville Company might be declared a trustee of the $40,000 par value of its capital stock, for use of complainant, in which the

beneficiaries of complainant Chaplin later intervened. The court dismissed the bill for want of equity, but the Circuit Court of Appeals reversed such decree, with directions to grant to complainant the decree prayed for, which was done accordingly May 16, 1903; and on the 12th day of May, 1904, the Belleville Company did deliver to complainant certificates for 400 shares and for the beneficiaries of Chaplin 390 shares of the stock of the Belleville Company.

The Belleville Company, having been organized under the laws of Illinois of February 14, 1857, and March 4, 1859, did construct and put in operation a line of railway from Belleville to Duquoin, 56.4 miles, and October 1, 1866, issued $1,000,000, par value, first mortgage sinking fund bonds due in 30 years, with 8 per cent. interest, and on the same day leased all its property to the Terre Haute Company for 999 years for 40 per cent. of the gross earnings on the first $7,000 per mile, except certain coal business, to be 30 per cent., and generally all above $7,000 to $14,000 per mile 30 per cent. and 20 per cent. on gross earnings above $14,000 per mile. under which the Terre Haute Company operated the road until October 1, 1895, and under which from $178,000 to $228,580 was paid as yearly rentals. Previous to October 1, 1885, the Belleville Company lawfully issued $1,235,000 preferred capital stock, entitled to 8 per cent. annual dividends and $417,000 common stock, to which latter the Perry county stock belonged, as well as that issued under the order of the decree above mentioned. From 1885 to 1894 dividends were paid on the preferred stock annually from 5 per cent. to 8 per cent.; and on September 24, 1895, out of the surplus earnings of the Belleville Company there was declared a dividend of 19 per cent. on the common stock, but the dividends on stock in litigation were set apart and withheld. The lease of October 1, 1866, was a fair and beneficial lease, and by proper management would have yielded dividends upon the common stock; but because of things done, to be hereafter mentioned, by the defendant the Illinois Central Railroad Company, the rentals were and are insufficient to pay dividends on the common stock after October 1, 1895. The Illinois Central Railroad Company, owning and operating a line of road with western terminus in Duquoin, and being desirous of procuring a road of its own to East St. Louis, it is alleged as a conclusion merely, formed a fraudulent and unlawful scheme to procure control of the Belleville Company and Terre Haute Company by acquiring control of all or sufficient number of the shares of the capital stock of each to control the policies and destinies of the same, and solely in the interest and for the benefit of the Illinois Central Railroad Company; and on or before April 1, 1896, in pursuance of said unlawful plan and scheme, the Illinois Central Railroad Company had purchased and did own or control all the preferred stock of the Belleville Company except 25 shares, and all its common stock except 5 shares, and the 1,000 shares for which said certificates had been issued to Perry county. On April 4, 1896, the Illinois Central Railroad Company procured the execution by the officers of the Belleville Company to it of all the property of the Belleville Company leased to the Terre Haute Company for 99 years, and which it is averred was executed in order to defraud the equitable owners of said 1,000 shares of common stock for which said certificates had been issued to Perry county. Said lease was highly beneficial to the Illinois Central Railroad Company, but detrimental to the Belleville Company; but said lease provides that the Illinois Central Railroad Company shall pay the Belleville Company $61,200, to be paid to the holders for the time being of the outstanding preferred stock of said Belleville Company as dividends guaranteed to them by the lessee at the rate of 4.8 per cent. per annum, and as further rental to be paid the interest on the outstanding bonds of the Belleville Company, amounting to $1,000,000. On September 10, 1897, by means of the control of stock before mentioned, the Illinois Central Railroad Company procured the Belleville Company to transfer all its property to the Terre Haute Company in consideration of $1,400,000 of the bonds of the Terre Haute Company, with 4 per cent. interest due in 1951, the assumption of the outstanding first mortgage bonds of the Belleville Company, and the assumption of the liability of the Belleville Company under the lease of April 4, 1896, all of which it is averred was grossly inadequate. On February 17, 1904, the Terre Haute Company executed a deed of its property to the Illinois Central Railroad Company, leaving the only asset of the

Belleville Company the bonds of $1,400,000 of the Terre Haute Company, the income thereon being $56,000, sufficient only to pay 4½ per cent. on preferred stock, and the common stock is left without value. On September 15, 1897, the Illinois Central Railroad Company and the Terre Haute Company mortgaged those properties to the United States Trust Company for $15,000,000.

In its prayers the bill seeks divers discoveries, cancellation of the leases of October 1, 1895, and September 15, 1897, and deeds of September 10, 1897, and February 17, 1904, for accounting, receiver, and for general relief.

Squire, Sanders & Dempsey and Stewart, Eliot, Chaplin & Blayney, for complainants.

Blewett Lee, for defendant Illinois Cent. R. Co.

Rearick & Meeks, for defendant United States Trust Co.

WRIGHT, District Judge (after stating the facts as above). The arguments of the demurrers of the respective defendants to the bill of complaint of the complainant have taken a broad range, and have included many questions, in view of the conclusion to be reached, not necessary to decide. The questions most elaborately argued by counsel for each side of the case, numerous authorities being cited thereon, are as to the statute of limitations and the equity rules concerning laches. Very much could be said upon this subject, and arguments of the strongest character could be produced as affecting either side of the contention here, were it necessary to enter upon that subject in order to reach a conclusion and support the judgment of the court upon it. In my considerations of the case I am met with another question, the determination of which has precluded me from going further into the case and giving judgment upon other questions so ably and elaborately argued by the counsel for the respective parties.

In the beginning it is both necessary and material to determine when the complainants became stockholders in the Belleville Company. This is a stockholders' bill, founded on rights which might properly be asserted by the corporation itself. If, then, the complainants were not shareholders at the time of the transaction of which they complain, unless such shares have devolved upon them since by operation of law, then under the provision of equity rule 94, as well as under the general rules of equity in most jurisdictions, and of which equity rule 94 is but declaratory, the complainants are without equity, and the court should so decree, and dismiss the bill accordingly. This doctrine is so elementary that it seems to me it would be like pedantry to indulge in the citation of authorities in support of it.

As to the precise time when complainants became shareholders in the Belleville Company much more could be said, if I did not feel bound by what the Circuit Court of Appeals has said, and in the very cause in which that court awarded the complainants the stock in question. The decision in that case is res judicata, and for that reason alone is binding in this case; but otherwise the opinion of the court in the case is of controlling authority, because it is the expression of the superior court. In that case it was said of the same bonds, stock subscription, and stock here involved in the present case:

"The bonds were void. The stock subscription was void. The stock certificate was void; but the stock was not void. The 1,000 shares, with respect

to which the void subscription was made and the void certificate issued, were a part of the authorized capital stock, were as existent and as valid as any other of the shares, and were fully in the directors' power to dispose of for value to any one who had capacity to contract." Citizens' Saving & Loan Association v. Belleville & Southern R. R. Company, 117 Fed. 109, 54 C. C. A. 495.

If, then, as the court said, the shares were fully in the directors' power to dispose of for value to any one who had capacity to contract, such shares belonged to the Belleville Company, and were wholly under its dominion, and were not and could not be owned by complainants, or any other person, without the consent of the directors, for value received, and the title in such shares being so vested, at no time was it divested until the vis major, the coercive force, of the decree of the court of May 16, 1903, caused the stock to be conveyed and delivered to complainants on May 12, 1904, when they for the first time were given dominion and ownership to the property thereby represented. Previous to that time complainants had but a right of action, and possessed nothing but a right of action, which they might, if they so willed, have converted into a suit for damages; and it could as well be said they owned the specific dollars with which the judgment might have been paid as that they owned the particular shares of stock with which the decree was eventually satisfied. In truth, if we might be permitted to go behind the discussion of the Circuit Court of Appeals, and look into the facts as disclosed by the bill of complaint, it would be discovered that, inasmuch as the bonds were void, the stock subscription of Perry county was void, the stock certificate to it also being void, and by reason of all these voids the stock was all the time remaining unsubscribed in the Belleville Company, it belonged to Chamberlain under his contract, by which he was to receive all unsubscribed stock remaining at the completion of the construction of the road.

Legally can there be a doubt that the title was in him, in view that all other attempts to dispose of it had been futile, and judicially decreed to be void, and it was only by force of the decree that was given, and until then, that he was divested of such title, and the same transferred to complainants? While it does not appear that Chamberlain was a party to that proceeding, that does not affect the force of the decree itself, but would be, if any defect at all, an error for which the person entitled might seek a remedy in some appropriate way. And from these simple statements of the clear situation of the stock in question it is apparent, without further argument, that the stock did not devolve upon the complainants by operation of law since the transactions complained of, but merely as the result of implied contract springing from the failure of the original consideration of the purchase by Perry county, merged in and given effect by the decree of May 16, 1903.

Entertaining the views I have endeavored to express, the necessity of going into the many other questions so ably and interestingly argued by counsel is thereby superseded, and no essential purpose would be subserved thereby; and I am not, therefore, disposed to extend this opinion to a tedious length, to include an irrelevant discussion, as it

follows from the reasons already given that I am of the opinion the bill is without equity.

The demurrers will be sustained, and the bill dismissed for want of equity, at the cost of the complainant. Let a decree be prepared accordingly.