CITIZENS' SAVINGS & TRUST CO. et al. v. ILLINOIS CENT. R. CO. et al.

(Circuit Court of Appeals, Seventh Circuit.   October 4, 1910.)

No. 1,681.

1. CORPORATIONS (§ 98*)— STOCKHOLDERS — RIGHTS OF PAID SUBSCRIBERS TO STOCK.

The owner of a paid subscription to the stock of a corporation is the full beneficial owner of the stock, a certificate of stock being merely evidence of ownership; and, during the time in which a company fails or refuses to issue a certificate to a subscriber who has paid in full, it is at most the holder of the naked legal title in trust for the beneficial owner.

[Ed. Note.—For other cases, see Corporations, Cent. Dig. §§ 436-443; Dec. Dig. § 98.*]

2. CORPORATIONS (§ 98*)— STOCKHOLDERS — RIGHTS OF PAID SUBSCRIBERS TO STOCK.

A decree requiring a corporation to issue a certificate of stock to the complainants, who were owners of a paid subscription, did not create their ownership of the stock, but merely adjudged the fact that they had been the full beneficial owners since their ownership of the subscription with all the rights of stockholders.

[Ed. Note.—For other cases, see Corporations, Cent. Dig. §§ 436-443; Dec. Dig. § 98.*]

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

3. CORPORATIONS (§ 190*)—SUITS BY STOCKHOLDERS—GROUNDS FOR RELIEF.

A bill, which alleges that complainants were the equitable owners of stock in a railroad corporation, and that defendant with full knowledge of their claim acquired control of a majority of the stock, and, through such control and for the purpose of defeating their rights, caused the company to refuse to issue them a certificate and to litigate their claim and in the meantime to transfer its entire property to defendant under such an arrangement as to render the stock valueless when complainants finally obtained it, states a cause of action for equitable relief.

[Ed. Note.—For other cases, see Corporations, Dec. Dig. § 190.*]

4. EQUITY (§ 72*)—LACHES—SUITS FOR FRAUD.

In cases of fraud it usually takes something besides mere delay to make a chancellor close the door to relief, such as a change of conditions brought about by complainant's apparent acquiescence in the wrong.

[Ed. Note.—For other cases, see Equity, Cent. Dig. §§ 207–226; Dec. Dig. § 72.*]

5. CORPORATIONS (§ 189*)—SUITS BY STOCKHOLDERS—LACHES.

Stockholders in a railroad company *held* not barred by laches from maintaining a suit to set aside transfers of its property by the company to its codefendant, which caused the company to litigate complainant's claim to their stock and in the meantime concealed the fact that it had become the owner of a large majority of its stock and controlled all its acts and in the transactions by which the property was transferred was virtually both seller and buyer.

[Ed. Note.—For other cases, see Corporations, Dec. Dig. § 189.*]

6. CORPORATIONS (§ 189*)—SUITS BY STOCKHOLDERS—CONDITIONS PRECEDENT.

Where a railroad company transferred its property by leases and afterward by sale to another company, which had acquired practically all of its stock, a minority stockholder is not required to return the consideration paid for such leases and deeds to entitle him to maintain a suit to set aside such transfers.

[Ed. Note.—For other cases, see Corporations, Cent. Dig. §§ 706–722; Dec. Dig. § 189.*]

Appeal from the Circuit Court of the United States for the Eastern District of Illinois.

Suit by the Citizens' Savings & Trust Company and Trescott F. Chaplin, trustee, against the Illinois Central Railroad Company, the Belleville & Southern Illinois Railroad Company, the St. Louis, Alton & Terre Haute Railroad Company, and the United States Trust Company of New York. Decree for defendants on demurrer (173 Fed. 556), and complainants appeal. Reversed.

Edward C. Eliot and J. M. Blayney, Jr., for appellants.
Blewett Lee and George F. Rearick, for appellees.

Before GROSSCUP, BAKER, and SEAMAN, Circuit Judges.

BAKER, Circuit Judge. This suit, begun in August, 1905, is by the Citizens' Savings & Trust Company, a citizen (fictionally) of Ohio, and Chaplin, trustee, a citizen of Missouri, as complainants, against the Illinois Central Railroad Company, the Belleville & Southern Illinois Railroad Company, the St. Louis, Alton & Terre Haute Railroad Company, citizens of Illinois, and the United States Trust Company, a citizen of New York, as defendants. The Illinois Central and the United States Trust Company filed general and special de-

murrers. The Circuit Court passed upon one ground of demurrer only, holding that the suit was instituted in violation of equity rule 94, and dismissed the bill for want of equity.

The bill opens by setting forth at length certain facts which appear in Citizens' Savings & Loan Association v. Belleville & Southern Illinois Railroad Co., 117 Fed. 109, 54 C. C. A. 495. For the purposes of this case the following epitome will suffice: By virtue of doings under a construction contract between one Chamberlain and the Belleville Company, Chamberlain subscribed and paid for a certain 1,000 shares of the common stock of the Belleville Company. By virtue of dealings between complainants and Chamberlain, complainants became the owners prior to 1895 of Chamberlain's paid subscription for 790 of the shares.

The suit (in 117 Fed. 109, 54 C. C. A. 495) was begun in 1898 and in effect was for the specific performance of the subscription contract. We held that complainants had not been guilty of laches in beginning or prosecuting their suit and that they were entitled to certificates for the shares. A final decree was accordingly entered in the Circuit Court on May 16, 1903, and on May 12, 1904, the Belleville Company in compliance with the decree issued certificates to complainants.

In 1866, the bill proceeds to allege, the Belleville Company leased its line to the Terre Haute Company for 999 years on the basis of a division of the gross earnings. Under the lease the Belleville Company received enough to pay dividends on its preferred stock and to accumulate a fund from which it declared a 19 per cent. dividend on the common stock in 1895. Gross earnings (and therefore the Belleville Company's rental) steadily increased from 1866 to 1895. Since 1895 the gross earnings have continued to increase, but the Belleville Company has derived no benefits therefrom on account of the doings of the Illinois Central.

Prior to 1895 the Illinois Central owned a line whose western terminus was Du Quoin, Ill. The Belleville line extended from Du Quoin to Belleville, the Terre Haute line from Belleville to East St. Louis. The Illinois Central, desiring to reach East St. Louis, formed a plan of securing control of the Belleville and Terre Haute lines by acquiring enough stock in each company to elect its own men as directors and through them to abrogate the 1866 lease, make new leases and conveyances, all in the interest of the Illinois Central and detrimental to the interest of the Belleville Company. Before embarking upon this plan, the Illinois Central knew that complainants were claiming to be the equitable owners of the 790 shares in the Belleville Company. Prior to April 4, 1896, the Illinois Central had acquired all of the preferred stock of the Belleville Company except 35 shares, and all of the common stock except 5 shares and the 1,000 shares of the Chamberlain subscription. On April 4, 1896, the Illinois Central procured the Belleville Company to execute a purported lease of the Belleville line to the Illinois Central for 99 years at a yearly rental just sufficient to pay interest on bonds and guaranteed dividends on preferred stock of the Belleville Company. This rental was not fair or adequate, and the arrangement was destructive of the

182 F.—39

value of the Belleville Company's common stock. At a stockholders' meeting of the Belleville Company on October 23, 1896, a resolution was adopted purporting to ratify the lease of April 4th. Notice was sent to preferred stockholders, but not to common stockholders, nor did complainants have notice. All the Belleville stock that was voted in favor of the resolution was owned or controlled by the Illinois Central. By June 30, 1897, the Illinois Central owned or controlled all the stock of the Terre Haute Company, and had its own men as the directors of both the Belleville and the Terre Haute companies. On that day the two directorates entered into an agreement for the conveyance of the Belleville line to the Terre Haute Company. On September 9, 1897, at stockholders' meetings of the Belleville and the Terre Haute companies held in the office of the Illinois Central, the agreement was purported to be ratified. The stock that was voted favorably was owned or controlled by the Illinois Central. A deed was made on September 10, 1897. The consideration expressed to be paid to the Belleville Company was $1,400,000 of 4 per cent. bonds of the Terre Haute Company, the assumption of the Belleville Company's outstanding bonds and of the Belleville Company's obligations under the purported lease of April 4, 1896. This consideration was not fair or adequate. The arrangement, if sustained, would leave the Belleville Company no assets except the Terre Haute Company's bonds, the interest on which, if paid, would suffice only to cover a dividend of between 4 per cent. and 4½ per cent. on the preferred stock, all of which is preferred at 8 per cent. and is owned by the Illinois Central; and the common stock held by complainants would be deprived of all practical value. On September 15, 1897, the Illinois Central had the Terre Haute Company confirm the Belleville Company's lease of April 4, 1896, and on February 17, 1904, the Terre Haute Company deeded the Belleville line to the Illinois Central.

In complainants' suit to obtain stock certificates, the Illinois Central paid costs and attorney's fees and directed the defense. The steps of the Illinois Central stated in the preceding paragraph were taken for the purpose of depriving the Belleville Company's common stock of all value, so that, if complainants should succeed in establishing the fact of their equitable ownership and their consequent right to certificates, their victory would be barren.

Since 1897 the Illinois Central had prevented the Belleville Company from making the annual reports required by the Illinois law. This was for the purpose of concealing the earning capacity and income of the Belleville line and the amount of stock acquired in the Belleville Company by the Illinois Central.

The aforesaid doings of the Illinois Central were concealed by it, were not disclosed in annual reports or otherwise, and were not fully known to complainants until immediately preceding the bringing of this suit. The first that complainants knew of the Illinois Central's purchase of any of the Belleville Company's stock was during the examination of a witness in the stock-certificate suit. Complainants immediately began an investigation, the diligent prosecution of which did not yield adequate information on which to base a suit until August, 1905, when the bill was filed.

On December 15, 1897, a trust deed was executed by the Illinois Central and the Terre Haute Company to the United States Trust Company, covering, among other properties, the Belleville line. Complainants do not know the exact terms of said trust deed, but aver that the trust company acquired some interest in the subject-matter of the bill, and for that reason it is joined as a defendant, that it may, if it desires, appear and defend.

Prayers of the bill are for discoveries, cancellations of leases and deeds, receiver, accounting, and general relief.

The claim that the suit is violative of equity rule 94, in that the bill does not show that complainants were stockholders at the time of the transactions complained of, or that the stock devolved upon them by operation of law since that time, is in our opinion utterly unwarranted, and arises, we believe, from a failure to apprehend the scope of the decision in the previous suit. In that case we held that complainants prior to 1895 were the owners of Chamberlain's paid subscription for 790 shares of the Belleville Company's common stock. The owner of a paid stock subscription is the full beneficial owner of the stock. A stock certificate is merely evidence of ownership; and, during the time in which a company fails or refuses to issue a certificate to a subscriber who has paid in full, the company is at most only the holder of the naked legal title in trust for the beneficial owner. Cook v. Sterling Electric Co. (C. C.) 118 Fed. 45. The decree of May, 1903, did not create complainants' ownership of the stock; it adjudicated the fact (which the defendant had been disputing) that ever since a time antedating 1895 complainants had been the full beneficial owners, and that therefore now (1903) their bare trustee should give them the evidences of title.

Barring laches and other objections hereinafter considered, the equity of the bill is clear. With knowledge of complainants' assertion of ownership, the Illinois Central formed a plan to forestall secretly the benefits of a successful prosecution of their claim; it caused the Belleville Company to fight off complainants' claim from 1898 to 1903; it held the Belleville Company and the Terre Haute Company as puppets in its hands and made them go through the motions of abrogating their lease and of executing new leases and deeds to it, while it itself was both bargainor and bargainee. The effect accorded with the purpose—it deprived complainants of their property. Force was the primitive means of taking a man's property away from him. Stealth and guile followed. But these fared no better in the courts than force. Meeker v. Winthrop Iron Co. (C. C.) 17 Fed. 48; Jones v. Missouri-Edison Electric Co., 144 Fed. 765, 75 C. C. A. 631; Wheeler v. Abilene Nat. Bank Bldg. Co., 159 Fed. 391, 89 C. C. A. 477, 16 L. R. A. (N. S.) 892, and cases there collated. It may be that invention will never cease to be exercised in devising plans for wrongful appropriation; but courts of equity will never countenance any scheme to defraud, no matter how novel and ingenious.

Laches is a doctrine of equity. No hard and fast rule, applicable to all cases, has ever been laid down. In each instance the quest is for the equity of the particular case. If an alleged owner permits enough time to elapse to raise, under a statute of repose, the presumption of

a grant, a court of equity will not inquire into his title. His claim is stale. In cases of fraud, however, it usually takes something besides mere delay to make a chancellor close the door; for instance, a change of conditions, brought about by the complainant's apparent acquiescence in the wrong, which would make a present enforcement of the claim inequitable. Here the acts complained of, all taken in furtherance of one plan, extended from 1895 to 1904. Suit was brought in 1905. These years were spent by the Illinois Central in fighting, under cover of the Belleville Company, complainants' endeavor to compel recognition of their ownership. This should not earn for the Illinois Central the benefit of laches as a defense, even if there were no other elements affecting the question. But, to use the protraction of the Belleville fight as a cover for the absorption of the property, concealment was necessary. It is said, outside the averments of the bill, and admitted by complainants, that the leases and deeds were duly recorded. On their faces these instruments purported to represent the free contracts of competent parties. Their recordation was no notice that the Illinois Central was both lessor and lessee, seller and buyer. The cessation of Belleville Company public reports, the exclusion from Illinois Central public reports of the facts respecting its dominion (through stock holdings) of the Belleville and Terre Haute companies, the election of dummy directors, the "meetings" of stockholders of the Belleville and Terre Haute companies in the office of the Illinois Central at which all of the stock was voted by the Illinois Central, all with the Illinois Central's knowledge of complainants' assertion of their rights and with the intention of rendering the establishment of their rights fruitless, amounted to acts of suppression and concealment. It was only during the taking of testimony in the Belleville suit (which suit itself was evidence that complainants had no intention of abandoning their rights as owners of an interest in the Belleville line) that complainants obtained the first inkling that the Illinois Central was buying stock in the Belleville Company. From that time on they were diligent in collecting the facts on which to base this suit. Reference is made to the case of Citizens' Savings & Trust Co. v. Belleville Co., 157 Fed. 73, 84 C. C. A. 577. Complainant there sought to recover a dividend declared in 1895. There was a delay of more than ten years in suing. "Presumptively (aside from admissions of fact at the bar) the dividend was declared by resolution of record and likewise reported to the Railroad and Warehouse Commission of the state. * * * With the fact of dividend declaration thus open to discovery on examination, if not either notorious or inferable under the circumstances, the neglect to make claim for them is without equitable excuse. If appellant was entitled to an interest in such dividend through its equities in the stock, it was equally a present right of action which should have been brought into the suit then commenced." There was no wrong in declaring the dividend. It was something that might naturally be expected. It was reported publicly. Here the cause of action arises from a wrong, the betrayal of complainants' interests by their agents, the directors of the Belleville Company. Minutes of directors' meetings would not disclose that the directors were dummies in the control of the Illinois Central. But, even if corporate records would disclose the

betrayal, complainants would not be chargeable with negligence. Directors' betrayal of trust is not something naturally to be expected. Owners of stock are not bound, at their peril, to search the corporate records for fraud. Until some notice of fraud is brought home to them or circumstances develop that would put a prudent person on inquiry, they may rest on the assumption that their directors are faithful. Cook on Corporations, § 731; Helliwell on Stock & Stockholders, § 408; Gilman, C. & S. Ry. Co. v. Kelley, 77 Ill. 426.

It is contended that complainants can have no relief until the considerations paid by the Terre Haute Company to the Belleville Company and by the Illinois Central to the Belleville and Terre Haute companies for the challenged leases and deeds have been restored. Complainants have none of the considerations. Under the averments of the bill, whatever considerations passed went from one till of the Illinois Central to another.

Changes in operation, commingling of funds, inclusion of other properties besides the Belleville line in the leases and deeds, may occasion difficulties in an accounting, if that should prove necessary. But the confused state of affairs was brought about by the Illinois Central in pursuing the averred fraudulent plan, and certainly creates no bar to relief.

Want of capacity of complainant corporation to own stock in another corporation, as being beyond its charter powers, does not appear on the face of the bill.

The United States Trust Company was alleged to have "acquired some interest in the subject-matter of the bill," and was invited to set it up. The bill does not show that any bonds under the trust deed have been issued. If there are innocent holders of any such bonds, they can be protected in the final decree. For example, if the bill should be sustained, a decree might give complainants a lien on the Belleville property for the value of their interests therein, subject to the United States Trust Company's mortgage, with a proviso that the other property in the mortgage and the general assets of the Illinois Central should first be exhausted.

The decree is reversed, with the direction to overrule the demurrers.